UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

BEELAND PROPERTIES, LLC                                                      CASE NO. 24-10461
    DEBTOR                                                                                      CHAPTER 11

BEELAND PROPERTIES, LLC
    PLAINTIFF

VERSUS                                                                                                ADVERSARY NO. 24-1030

TDP GROUP, LLC
    DEFENDANT

## MEMORANDUM OPINION

Beeland Properties, LLC ("Beeland") filed a voluntary petition under subchapter V of chapter 11 on June 11, 2024. It remains the debtor in possession. On October 31, 2024, Beeland filed this adversary proceeding against TDP Group, LLC ("TDP"), for whom Beeland acted as a surety, seeking, among other things, reimbursement from TDP if Beeland is required to pay the claims of Bank of St. Francisville and Citizens Bank arising out of loans made by the two banks to TDP. Beeland has alleged that TDP's agent for service of process is avoiding service, resulting in TDP being served at seven different locations by regular U.S. mail, postage prepaid in accordance with Bankruptcy Rule 7004(b). TDP has not filed responsive pleadings to date. No default pleadings have been filed yet, ostensibly because Beeland's claim for reimbursement is premature under Louisiana law until such time as Beeland actually pays, as surety for TDP, the two banks.

According to Beeland, it learned in April of 2025 that TDP may be due approximately $800,000 for Employee Retention Tax Credits ("ERTC") from the Department of the Treasury. No doubt fearful that TDP will abscond with the funds, thereby reducing, if not eliminating

altogether, the value of the estate's inchoate reimbursement claim against TDP, Beeland filed two separate *ex parte* motions for garnishment under Bankruptcy Rule 7064[1] and applicable Louisiana law on prejudgment remedies, namely La. C.C.P art. 3541.[2] The first was against the Internal Revenue Service ("IRS"), resulting in the issuance of a writ of attachment ("Writ") on May 1, 2025.[3] The second was directed to Red River Bank, which upon belief, is the last known bank used by TDP, and was also issued on May 1, 2025.[4] Red River Bank has not challenged the writ directed to it.

The IRS did challenge the Writ. Specifically, the United States, on behalf of the IRS, filed a Motion to Quash the Writ.[5] Beeland filed a Response in Opposition to Motion to Quash the Writ.[6] A hearing was held on the Motion to Quash on July 9, 2025, and at the conclusion of the hearing, the court took the matter under advisement.

The United States contends that the Writ should be quashed on two grounds: 1) the United States has not waived sovereign immunity, and 2) it is barred by the Anti-Assignment Act.

---

[1] F.R.B.P 7064 makes F.R.C.P. 64 applicable in adversary proceedings. F.R.C.P. 64(a) provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies."  F.R.C.P. 64(b) specifically includes attachment and garnishment as available remedies.  !

[2] La. C.C.P. art. 3541 provides that grounds for obtaining a writ of attachment under Louisiana law.

[3] P-27.

[4] P-26.

[5] P-43.

[6] P-50.

## SOVEREIGN IMMUNITY

The burden is on Beeland, not the United States, to point to a statute indicating Congress' unequivocal waiver of the defense of sovereign immunity.[7] In a bankruptcy, a waiver of sovereign immunity is governed by § 106(a) of the Bankruptcy Code. Specifically, § 106(a) lists 59 sections of the Bankruptcy Code where sovereign immunity is abrogated. The United States Supreme Court has recently explained that "'[s]overeign immunity is jurisdictional in nature' and deprives courts of the power to hear suits against the United States absent Congress's express consent."[8] In the absence of such express consent, the United States claims this garnishment must be quashed.

In *United States v. Miller*,[9] the trustee was seeking to avoid and recover on a fraudulent transfer against the United States through § 544(b). That subsection generally permits the trustee to step into the shoes of an unsecured creditor who could have avoided the transfer under applicable non-bankruptcy law. Despite § 544 being listed in § 106(a), the Supreme Court refused to find that the United States waived sovereign immunity as to the underlying state law claim. Although not directly on point, the Supreme Court's ruling in *Miller* is relevant in that it construed § 106 narrowly, finding:

> "Under long-settled law, Congress must use unmistakable language to abrogate sovereign immunity." *Financial Oversight and Management Bd. for P. R. v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 342, 143 S.Ct. 1176, 215 L.Ed.2d 321 (2023). That means that we must "construe any ambiguities in the scope of a waiver in favor of the sovereign." *FAA v. Cooper*, 566 U.S. 284, 291, 132 S.Ct. 1441, 182 L.Ed.2d 497 (2012). Here, § 106(a)'s language unmistakably waives sovereign immunity for the federal cause of action created by § 544(b).

---

[7] *Simon v. Montgomery*, 54 F. Supp. 2d 673 (M.D. La. 1999).

[8] *United States v. Miller*, 145 S. Ct. 839, 849, 221 L. Ed. 2d 373 (2025) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

[9] *United States v. Miller*, 145 S. Ct. 839, 221 L. Ed. 2d 373 (2025).

> But, for all of the reasons just given, we cannot say that it does the same for the state-law claims nested within § 544(b)'s "applicable law" clause. …[C]onstruing § 106(a) to reach the elements of § 544(b) would not only run counter to our traditional understanding of sovereign-immunity waivers as purely jurisdictional, but also contravene the text and structure of § 106(a) and § 544(b), and defy our established rule that sovereign-immunity waivers must be construed narrowly. Section 106(a)'s use of a malleable phrase like "with respect to" cannot blunt the countervailing force of those contextual considerations and interpretive principles.[10]

This court, taking a narrow view as it must under *Miller,* sees no unmistakable language abrogating sovereign immunity.  With § 106 of no help, Beeland must point to some other reason why sovereign immunity is not available as a defense.

Beeland argues that, unlike in *Miller*, the IRS is not being sued here to recover money or damages.  Instead, Beeland cites *Central Virginia Community College v. Katz*,[11] as authority for its position that a bankruptcy court's exercise of *in rem* jurisdiction over property of the estate does not offend the doctrine of sovereign immunity when a money judgment is not sought against the United States.  The *Katz* case is distinguishable, however, because Beeland is attempting to attach a potential amount due TDP, not Beeland, for an ERTC. While Beeland's cause of action against TDP is undoubtedly property of the estate under 11 U.S.C. § 541, the potential ERTC payout itself is not.  Put another way, the IRS is not holding property of Beeland's bankruptcy estate.[12]  Indeed, this is not an action for turnover of property of the estate pursuant to 11 U.S.C. § 542. If it was, sovereign immunity may very well be specifically

---

[10] *Miller*, 145 S.Ct. at 852-53.

[11] *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990 (2006).

[12] If Beeland had a judgment against TDP, other issues would then need to be addressed, such as when funds that are still in the hands of the IRS become the property of the taxpayer. *See In re Berman & Co.,* 378 F.2d 252, 253 (6th Cir. 1967); *Arnold v. United States*, 331 F. Supp. 42, 44 (S.D. Tex. 1971); *Brockelman v. Brockelman*, 478 F. Supp. 141, 144 (D. Kan. 1979); *Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1846).

abrogated pursuant to 11 U.S.C. § 106(a)(1) because § 542 is one of the expressly enumerated provisions.

Beeland fares no better under non-bankruptcy law. S*imon v. Montgomery*[13] involved a similar, albeit not identical, fact pattern in a non-bankruptcy garnishment case involving the IRS. There, much like in this case, the United States asserted sovereign immunity as a defense to the garnishment. The creditor/plaintiff conceded that no statutory waiver existed but rather claimed that the IRS could not invoke sovereign immunity because it was not a real party to the suit and was not subject to civil liability. That argument was rejected out of hand by the *Simon* court, citing to the service of process and discovery rules, clearly applicable to the IRS, as well as the potential for civil liability for failing to answer interrogatories. With no legitimate basis for the action offered, the court held that the garnishment could not go forward against the IRS:

> The doctrine of sovereign immunity protects the United States from suit except where immunity has been waived. "The natural consequence of the sovereign immunity principle is that the absence of consent by the United States is a fundamental defect that deprives the district court of subject matter jurisdiction." It is well-settled that only Congress can waive the United States' right to assert the defense of sovereign immunity, and this waiver "must be unequivocally expressed in statutory text" and "will not be implied." Furthermore, a party who sues the United States bears the burden of showing an unequivocal waiver of sovereign immunity. … [T]he burden is on the plaintiff to point to a statute indicating Congress' unequivocal waiver of the defense of sovereign immunity and consent to an action for garnishment of a federal tax refund. The Court could not locate, nor does the plaintiff cite, a statute or any jurisprudence authorizing a judgment creditor to garnish a judgment debtor's tax refund held by the United States. Thus, the doctrine of sovereign immunity bars plaintiff's garnishment proceeding against the United States.[14]

---

[13] *Simon v. Montgomery*, 54 F. Supp. 2d 673 (M.D. La. 1999).

[14] *Simon*, 54 F. Supp. 2d at 674–75 (citing *Pena v. United States,* 157 F.3d 984, 986 (5th Cir.1998); Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* 3d § 3654, at p. 281 (1998); *Hercules, Inc. v. United States,* 516 U.S. 417, 422, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996); *Cole v. United States,* 657 F.2d 107, 109 (7th Cir.1981); *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983); *Research Triangle Inst. v. Board of Governors of the Fed. Reserve Sys.,* 962 F.Supp. 61 (D.C.N.C.1997)).

In this court's view, the *Miller* and *Simon* holdings are entirely consistent. Beeland has not asserted, nor could it assert, a statutory basis for waiver under either § 106(a) or some non-bankruptcy federal statute. This court clearly does not have *in rem* jurisdiction over TDP's potential property, no matter how tempting it might be to preserve the value of the estate's reimbursement claim by placing a hold on the money. And as pointed out in *Simon*, even a garnishee faces some potential exposure to liability. The court thus finds that Beeland has not met its burden of proving that Congress expressly provided for a waiver of sovereign immunity sufficient to allow Beeland to garnish TDP's potential ERTC proceeds.

Accordingly, the United States' Motion to Quash is granted. Because the court has ruled that the Writ should be quashed, the court need not reach the United States' alternative argument under the Anti-Assignment Act. The court will enter an order in accordance with this Memorandum Opinion.

Baton Rouge, Louisiana, July 17, 2025.

                                                 **/s/ Michael A. Crawford**
                                                 MICHAEL A. CRAWFORD
                                                 UNITED STATES BANKRUPTCY JUDGE